IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Terry R. Gadberry, | ) | C/A No. 0:09-3327-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Rental Service Corporation and Matrix | ) | |
| Absence Management, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

     The plaintiff, Terry R. Gadberry ("Gadberry"), filed this employment case against his former employer, Rental Service Corporation ("RSC"), as well as Matrix Absence Management, Inc. ("Matrix"), an employee benefits administrator for RSC. In his Complaint, Gadberry asserts claims against both defendants for violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"), the Family Medical Leave Act, 29 U.S.C. § 2611, et seq. ("FMLA"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. ("ADEA"). This matter is before the court for a Report and Recommendation on the defendants' motions to compel arbitration. (ECF Nos. 53 & 57.) The court held a hearing on these motions on January 18, 2011.

**DISCUSSION**

**A.     Arbitration Generally**

     A litigant can compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., if the litigant can demonstrate: " '(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign

commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.' " Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (quoting Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002)).  The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The policy behind the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991).  Thus, courts are to afford a "healthy regard" for the federal policy favoring arbitration, id. at 26, and arbitration agreements are to be "rigorously enforced," Perry v. Thomas, 482 U.S. 483, 490 (1987).  Doubts regarding the scope of issues covered by an arbitration agreement must be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  The United States Supreme Court has specifically held that the FAA and the policies behind it apply in the employment context. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001).

When a question of arbitrability arises, the district court, not the arbitrator, decides whether a matter should be resolved through arbitration. See Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2859 (2010); AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651 (1986).  This determination, however, is limited to a two-step inquiry: (1) whether a valid arbitration agreement exists; and (2) whether the specific dispute falls within the substantive scope of the arbitration agreement. See Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999).  Arbitration is compelled "unless it may be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute." Peoples Sec.

Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). If all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is appropriate. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).

### B.     Validity of Arbitration Agreement

Whether a valid arbitration agreement exists is a question of state contract law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Here, RSC has presented a copy of an employment contract with Gadberry containing the following term:

> In consideration of my employment, I agree to comply with the policies, rules, regulations, and procedures of the Company. I understand and agree that, should I be hired by the Company, any disputes and/or claims I may have against RSC, its affiliates and/or subsidiaries shall be resolved exclusively by arbitration in accordance with the Rules of the American Arbitration Association and RSC's Alternative Dispute Resolution Policy.

(ECF Nos. 53-1 & 57-1.) Although Gadberry asserts that he does not recall signing this provision and complains that it was not explained to him, such arguments are insufficient to avoid a binding arbitration agreement. Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 365 (S.C. 2001) ("[A] person who can read is bound to read an agreement before signing it."); Regions Bank v. Schmauch, 582 S.E.2d 432, 440 (S.C. Ct. App. 2003) ("A person signing a document is responsible for reading the document and making sure of its contents. Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it."). Gadberry does not dispute that he signed the agreement and has presented no evidence contesting his signature on the document. Rather, he merely argues that RSC should present the original. This contention, akin to a "best evidence" argument under the Federal Rules of Evidence, is wholly insufficient to

contest the validity of the agreement. Cf. Fed. R. Evid. 1003 (Admissibility of Duplicates). Gadberry has raised no genuine question as to the authenticity of the original; his unsupported attack on the authenticity of the arbitration agreement falls flat.

Gadberry also contends that arbitration pursuant to the Rules of the American Arbitration Association would violate his due process rights; however, he has failed to provide any authority supporting this contention. Cf. Hooters of Am., Inc. v. Phillips, 173 F.3d at 938-41 (concluding, based on the employer's breach of the arbitration agreement by "promulgating rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith," that the plaintiff was not required to submit to "rules . . . so one-sided that their only possible purpose is to undermine the neutrality of the proceeding"). Gadberry's other arguments attacking the validity of the arbitration agreement are similarly unavailing pursuant to the following authorities: Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90-91 (2000) (recognizing that arbitration costs could be prohibitively expensive, but holding that where the record failed to show that the plaintiff would bear such costs, the plaintiff's alleged "risk" was too speculative to justify invalidating the arbitration agreement); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 481 (1989) (rejecting generalized attacks on arbitration that rest on "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants"); Towles v. United Healthcare Corp., 524 S.E.2d 839, 845 n.4 (S.C. Ct. App. 1999) (noting that an employee's continued employment constituted sufficient consideration fo an agreement accepting the company's Employment Arbitration Policy); Lackey v. Green Tree Fin. Corp., 498 S.E.2d 898, 902 (S.C. Ct. App. 1998) (holding that adhesion contracts are not per se unconscionable).

PJG

**C.     Waiver/Default**

Next Gadberry argues that RSC has waived the arbitration provision by failing to raise it until recently. Under the FAA,[1] " 'a party may demand . . . to have the subject matter of [a] federal action decided by arbitration, unless the party seeking arbitration is "in default" of that right.' " Microstrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001) (quoting Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985)); see also 9 U.S.C. § 3. The circumstances giving rise to a statutory default are not to be lightly inferred. Microstrategy, 268 F.3d at 249 (quoting Maxum, 779 F.2d at 981). "A party may waive its right to insist on arbitration if the party 'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing [arbitration].' " Id. Even if the party seeking to compel arbitration has engaged in litigation to some degree, the crucial question is whether the party opposing arbitration has suffered actual prejudice. Id. (quoting Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987)). While delay is a factor, it is not alone determinative. Id. at 249-50. "The party opposing arbitration 'bears the heavy burden of proving waiver.' " Id. at 250 (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 95 (4th Cir. 1996)).

---

[1] The court finds that the issue of whether RSC is in default of its right to arbitrate is governed by the FAA and federal case law interpreting it. However, the court observes that South Carolina law regarding waiver of arbitration agreements appears to be substantially similar to federal law on this point. See, e.g., Gen. Equip. & Supply Co., Inc. v. Keller Rigging & Constr., S.C., Inc., 544 S.E.2d 643 (S.C. Ct. App. 2001) (reversing lower court's finding that a party had waived its right to arbitration because the parties were involved in litigation for less than eight months, having only engaged in routine administrative matters and very limited discovery). Furthermore, Gadberry's argument that the FAA does not apply to the arbitration clause at issue because he is a worker engaged in foreign or interstate commerce, see 9 U.S.C. § 1, grossly misinterprets that section of the statute and is belied by United States Supreme Court precedent. See Circuit City Stores, Inc., 532 U.S. 105.



Here, although RSC delayed in raising the arbitration clause until eight months after being served with this lawsuit, the court observes that very little substantive proceedings have taken place during that time and no discovery has occurred. Moreover, while Gadberry argues that he has been prejudiced by RSC's delay because the statute of limitations has now run on his state law claims, absolutely no evidence supports the inference that RSC's delay in raising arbitration caused Gadberry to lose those claims. On the contrary, it appears that Gadberry was well aware that the statute of limitations deadline on his state law claims was imminent, and nevertheless failed to either file a motion to amend his complaint to assert those claims in this action or file a complaint in state court to preserve them.[2] Accordingly, any prejudice suffered by Gadberry in this regard appears to be of his own making, and in any event is certainly not the result of RSC's eight-month delay in seeking to compel arbitration.

**D.     Matrix**

Gadberry contends that it cannot be compelled to arbitrate its employment claims against Matrix because Matrix is not a party to the arbitration agreement.[3] Matrix, while maintaining its position that it was not Gadberry's employer and therefore not liable under the federal employment

---

[2] Although Gadberry argues that he stated in his memorandum filed with the court that he would like to amend his complaint to add state law claims, he never filed a Rule 15 motion. At the hearing on the instant motions Gadberry could not identify any applicable legal authority supporting the notion that a plaintiff can preserve a claim whose limitations deadline is fast approaching by attempting to reserve in a responsive memorandum the right to amend his complaint to add potential state law claims at some future date.

[3] The court rejects Gadberry's unsupported argument that the arbitration agreement does not apply to RSC's corporate successor. Cf. Fed. R. Civ. P. 25(c) (transfer of interest); (see also Def. RSC's Reply Mem. Supp. Mot. to Compel Arbitration at 5 n.2, ECF No. 64 at 5 n.2).



statutes upon which Gadberry advances his claims, counters that Gadberry's claims against it are also subject to arbitration under the intertwined claims doctrine.

The intertwined claims test stems from the doctrine of equitable estoppel. See generally Carter v. Mastec Servs. Co., Inc., C/A No. 2:09-2721-PMD, 2010 WL 500421 (D.S.C. Feb. 5, 2010) (Duffy, J.) (discussing intertwined claims test). Many circuits have estopped a signatory to an arbitration agreement from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve are intertwined with the agreement that the estopped party has signed. See Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995); see also Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 528-30 (5th Cir. 2000); Hughes Masonry Co., Inc. v. Greater Clark Cnty. Sch. Bldg. Corp., 659 F.2d 836, 841 n.9 (7th Cir. 1981). The United States Court of Appeals for the Fourth Circuit has applied this test and recognized that a nonsignatory to an arbitration agreement can nonetheless force a signatory to the agreement to arbitrate claims against it if the signatory is raising "allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392, 396 (4th Cir. 2005) (alterations in original) (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)).

Here, Gadberry's Complaint raises the identical claims against Matrix that it asserts against RSC. The claims appear to be substantially based upon the same factual allegations and are inherently inseparable. Carter, 2010 WL 500421, at *4. Accordingly, the court finds that Gadberry must be estopped from avoiding arbitration with Matrix on those claims.

**RECOMMENDATION**

The record shows that all of Gadberry's claims against RSC are covered by a valid arbitration agreement. Those claims must therefore be dismissed. Choice Hotels Int'l, Inc., 252 F.3d at 709-10. Moreover, Gadberry's claims against Matrix are intertwined with those he raises against RSC. Gadberry must therefore arbitrate those claims as well. Accordingly, the court recommends that the motions of RSC and Matrix to compel arbitration and to dismiss Gadberry's Complaint (ECF Nos. 53 & 57) be granted and all other pending motions (ECF Nos. 7, 18, 32, 33, & 37) be terminated so that those issues may be presented in arbitration.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 20, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).