IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Terry R. Gadberry, | ) | C/A No. 0:09-3327-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Rental Services Corporation and Matrix Absence Management, Inc., | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Terry R. Gadberry ("Gadberry") filed this employment action against his former employer, Rental Services Corporation ("RSC") as well as Matrix Absence Management, Inc. ("Matrix"), an employee benefits administrator for RSC (collectively "Defendants"). Gadberry alleges that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.* Dkt. No. 1.

This matter is now before the court on Defendants' motions to compel arbitration. Dkt. Nos. 53 and 57. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), (g), DSC, this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On January 18, 2011 the Magistrate Judge held a hearing on the motions to compel arbitration (Dkt. No. 65), and on January 20, 2011, the Magistrate Judge issued a Report recommending that Defendants' motions to compel arbitration be granted and Gadberry's claims against Defendants be dismissed. Dkt. No. 66. On February 7, 2011, Gadberry filed objections to the Report. Dkt. No. 71. For the reasons set forth below, the court adopts the

1

Report and Defendants' motions to compel arbitration are granted. Gadberry's claims against Defendants are dismissed without prejudice.[1]

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

Defendants move to compel arbitration based on an employment contract allegedly entered into between Gadberry and RSC containing the following term:

> In consideration of my employment, I agree to comply with the policies, rules, regulations, and procedures of the Company. I understand and agree that should I be hired by the Company, any disputes and/or claims I may have against RSC, its affiliates, and/or subsidiaries shall be resolved exclusively by arbitration in accordance with the Rules of the American Arbitration Association and RSC's Alternative Dispute Resolution Policy.

---

[1] Although Gadberry requests a hearing on this matter, the court finds that a hearing is unnecessary in resolving Defendants' motions.

Dkt. No. 53-1. The Report recommends compelling arbitration based on this clause of the employment contract.

Once a litigant moves to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, the district court determines whether a matter should be resolved through arbitration depending on (1) whether a valid arbitration agreements exists and (2) whether the dispute falls within the substantive scope of the arbitration agreement. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986); *see Hooters of Am. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999). The Supreme Court has consistently encouraged a "healthy regard for the federal policy favoring arbitration." *Levin v. Alms and Assocs.*, __ F.3d __, 2011 WL 456328, at *6 (4th Cir. Feb. 10, 2011) (internal quotations omitted). "The heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Id.*

In his twenty-five page objection, Gadberry makes numerous arguments that his claims should not be resolved through arbitration. Dkt. No. 71. In summary, he argues that no valid arbitration agreement exists, and, in the alternative, if it does exist, it cannot be enforced because (1) Defendants waived their rights under it; (2) it is violative of due process; (3) it does not apply to RSC's corporate successor or to Matrix; and (4) Gadberry is exempt from it as a transportation employee under the FAA. For the reasons set forth below and in the Report, the court rejects these arguments.

### I.     EXISTENCE OF VALID ARBITRATION AGREEMENT

Gadberry argues that Defendants failed to show that a valid arbitration agreement exists, and the Report erred by improperly putting the burden on Gadberry to prove that a valid arbitration

3

agreement does exist. Dkt. No. 71 at 7. The court disagrees and concludes that the Report properly applied the law. For the reasons set forth below, the court concludes that Defendants proffered affirmative evidence of a valid agreement, and Gadberry failed to raise a genuine issue of material fact that the arbitration agreement was invalid.

**Authenticity of Employment Contract.** Gadberry argues that no valid arbitration agreement exists because he does not recall signing the contract containing the arbitration clause.[2] However, this argument is not supported by affirmative evidence that he did not actually sign the contract. Gadberry challenges the authenticity of the copy of the employment contract contained in the record. Dkt. No. 71 at 3-6. He argues that circumstances suggest that the court should view the contract "with suspicion at best and as pure fabrication at worst."[3] *Id.* at 6. The only evidence he points to in supporting this claim is his own affidavit testimony that he does not remember signing the contract, having the contract explained to him, or receiving copies of any of the materials mentioned in the contract. *See* Dkt. No. 63-1. This evidence merely draws Gadberry's recollection and understanding of the agreement into question.[4] It would not support a finding that

---

[2] In his objection, Gadberry argues that he made twenty-one arguments concerning the existence of a valid arbitration agreement that were not adequately addressed by the Report. Dkt. No. 71 at 3-4. The court finds that the majority of these arguments are not relevant to the issue of the existence of the arbitration agreement and addresses them as they relate to Gadberry's other arguments.

[3] These alleged circumstances include (1) RSC's failure to provide Gadberry with the original document for him to ensure "that the signature on it is written (not photocopied in color) and that the ink and the paper can be traced back to that used in 2003;" (2) the "sudden appearance" of the document after Gadberry had been pursuing his discrimination claims for approximately three years; and (3) RSC's inability to produce the original copy of "a document that should be part of his personnel file . . . and should be easily located." Dkt. No. 71 at 3-6.

[4] Plaintiff has failed to point to any authority that would impose a duty on RSC to explain the contract to him. Therefore, this alleged lack of explanation is not sufficient to call into question the existence of an arbitration agreement. *See Munoz v. Green Tree Fin. Corp.*, 542 S.E. 2d 360,

he did not actually sign the relevant contract. In contrast, RSC has proffered affirmative evidence that the signed contract exists, which Gadberry does not adequately challenge. *See* Dkt. No. 53-1 (copy of signed employment contract containing arbitration clause).

**Lack of Mutuality.** Likewise, Gadberry's argument that the arbitration agreement is invalid for lack of mutuality fails. To the extent he argues a lack of consideration, his argument fails because RSC's consideration was the offer of employment. *See* Dkt. No. 53-1 at ¶ 6. To the extent he argues arbitration itself must be mutual for consideration to be adequate, his argument fails because mutuality is not a requirement for a valid arbitration agreement.[5]

**Duress.** Lastly, Gadberry argues that he entered into the arbitration agreement under duress. Dkt. No. 71 at 10. Because the FAA authorizes parties to seek revocation of an arbitration agreement "under 'such grounds as exist at law or in equity,' including . . . duress," courts may engage in a highly circumscribed review of an arbitration provision. *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001) (quoting 9 U.S.C. § 2). Though the FAA governs whether a dispute is arbitrable, courts must apply state law to decide issues of contract formation such as whether the arbitration agreement was entered into under duress. *See Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005).

Under South Carolina law, "[d]uress is a condition of mind produced by improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act

---

365 (S.C. 2001) ("a person who can read is bound to read an agreement before signing it").

[5] The cases cited by Gadberry note that mutuality of arbitration qualifies as consideration in an arbitration agreement but do not hold that it is a requirement of adequate consideration or validity of an arbitration agreement. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002); *Johnson v. Circuit City*, 148 F.3d 373 (4th Cir. 1998).

or form a contract not of his own volition." *Holler v. Holler*, 612 S.E.2d 469, 474 (S.C. Ct. App. 2005) (citing *Cherry v. Shelby Mut. Plate Glass & Cas. Co.*, 4 S.E.2d 123, 126 (1939)). The only evidence of duress Gadberry points to is his own affidavit testimony that "[t]here is no way I would have signed an arbitration agreement that would bind me like that . . . [t]he only way I would have signed anything like that is under duress." Dkt. No. 63-1. This is not an adequate showing of duress. As the record shows, Gadberry had free choice to sign the agreement, so he could be employed at RSC. Thus, Gadberry's argument that he was under duress fails.

Based on this record, the court concludes that Gadberry fails to raise a genuine issue of material fact as to the existence of a valid arbitration agreement.[6]

## II.    ENFORCEABILITY OF ARBITRATION AGREEMENT

Gadberry argues, in the alternative, that if the arbitration agreement was valid it is, nonetheless, unenforceable against him because (1) Defendants waived their rights under it; (2) it is violative of due process; (3) it does not apply to RSC's corporate successor or to Matrix; and (4) Gadberry is exempt from it as a transportation employee under the FAA. Each of these arguments fails for the reasons set forth below and explained in the Report.

**Waiver.** Gadberry argues that Defendants waived the arbitration provision by failing to raise it until recently. *See* Dkt. No. 15-18. He argues that the Report erred by calculating Defendants' delay in raising the arbitration clause from when this lawsuit began. *Id.* at 16. Gadberry argues the delay should be calculated from July 2008, when he filed a charge of discrimination against Defendants before the South Carolina Human Affairs Commission ("SHAC"). *Id.* The court is not

---

[6] Had Gadberry raised a genuine issue of material fact as to the existence of the arbitration agreement, the FAA would require the court to "proceed summarily" to jury trial on that issue. 9 U.S.C. § 4.

6

persuaded by this argument.

As a variety of courts have held, an employer's failure to raise the issue of arbitration with a state agency or the Equal Employment Opportunity Commission does not create a waiver. *See e.g.*, *DiCrisci v. Lyndon Guar. Bank of New York*, 807 F. Supp. 947, 954 (W.D.N.Y. 1992). This reasoning is consistent with the general rule that a party is under no obligation to make a pre-suit demand for arbitration. *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000). The Report was, therefore, correct to calculate Defendants' delay from the institution of this suit. Further, even if the calculation of the delay were to begin with the filing of Gadberry's SHAC claim, Gadberry has failed to show that he suffered actual prejudice to constitute a finding of waiver for the reasons set forth in the Report. *See* Dkt. No. 66 at 6.

**Due Process.** Gadberry argues that the procedures set forth in the arbitration agreement violate his due process rights. Dkt. No. 71 at 10-11. As the Report concluded, he has failed to provide any authority supporting this conclusion. Dkt. No. 66 at 4.

The arbitration agreement states that any disputes will be resolved "in accordance with the Rules of the American Arbitration Association." Dkt. No. 53-1. Gadberry cites to several rules of the American Arbitration Association ("AAA") claiming they are unfair because they limit rights that he would have in a judicial proceeding.[7] Dkt. No. 71 at 11-14. However, his argument falls

---

[7] The agreement also states that disputes will be resolved pursuant to RSC's Alternative Dispute Resolution Policy ("ADR Policy"). Gadberry raises concern that he was never provided a copy of the ADR Policy in support of his arguments that (1) he never signed the employment agreement (Dkt. No. 71 at 3 n.2); (2) if he did sign the contract, there could be no meeting of the minds on the material terms of the arbitration agreement if he never saw the ADR Policy (*Id.* at 9); and (3) the agreement was illusory because the ADR Policy was not provided to the employee before signing. *Id.* In response, RSC provided the court with the ADR Policy and Plaintiff's signed receipt of the document containing the ADR Policy, thereby mooting Plaintiff's arguments. Dkt. No. 73-2. Additionally the ADR Policy describes a mediation program available to employees

short because arbitration procedures need not mirror those of a judicial proceeding to be enforceable. *See, e.g.*, *Sydnor*, 252 F.3d at 306. On the rare occasion when a court has determined that arbitral procedures render an arbitration agreement unenforceable, the one-sided provisions have been so pervasive and extreme that the arbitration agreement created a "sham system unworthy even of the name of arbitration." *Hooters of Amer., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999). Gadberry's general complaints about the rules promulgated by the AAA fail to rise to this level. Gadberry has, therefore, failed to make a showing that the arbitration procedures violate his due process rights.[8]

**Corporate Successors.** Gadberry asserts that he was originally employed by "Rental Services Corporation" with whom he allegedly signed an employment contract. Dkt. No 62 at 3. Since his employment, he alleges that the company was sold and changed its name to "RSC Equipment Rental, Inc.," the named Defendant in this case. *Id.* He argues that because the employment contract does not specifically apply to any "successor or assign," Defendant RSC is not a party or a beneficiary to the contract. *Id.* at 4. The only evidence Gadberry proffers to support this argument is an unauthenticated, unidentified document that purports to describe a sale of the

---

before they would reach arbitration and therefore has no bearing on whether the arbitration agreement would be enforceable. *Id.*

In his supplemental response Gadberry asserts several arguments about the ADR Policy based on a "Separation Agreement and Release" that he refused to sign upon termination. Dkt. No. 80-1 at 6. By Gadberry's own admission he did not enter into this agreement and it is not the basis of Defendants' motions to compel arbitration. Its provisions, therefore, are not relevant to the resolution of Defendants' motions.

[8] Gadberry also estimates what arbitration proceedings could cost him and argues these prohibitive costs invalidate the arbitration agreement. The court finds this argument speculative and without merit. It is well settled that the mere "risk" that a litigant will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

company's stock and a name change. Dkt. No. 63-3. Assuming the document is what it purports to be, there is no indication that the newly named company would not be the assignee of the employment contract with rights to enforce it. *See, e.g.*, *I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396, 400 (8th Cir. 1986) (stating that assuming a valid assignment, the assignee could enforce an arbitration provision entered into by the assignor). The court adopts the Report's reasoning and rejects Gadberry's unsupported argument that the arbitration agreement does not apply to Defendant RSC.

**Matrix.** Gadberry argues that he cannot be compelled to arbitrate his employment claims against Matrix because Matrix is not a party to the arbitration agreement. Dkt. No. 71 at 18. The court disagrees. Gadberry's complaint raises identical claims against Matrix that it asserts against RSC. Gadberry's claims appear to be substantially based upon the same factual allegations and are inherently inseparable from his claims against RSC. Therefore, the court adopts the Report's reasoning under the intertwined claims doctrine that Gadberry must be estopped from avoiding arbitration with Matrix on those claims.[9] *See* Dkt. No. 66 at 6-7.

**Transportation Employee.** Finally, Gadberry argues that the FAA does not apply to him as a transportation worker. The court adopts the reasoning of the Report and rejects Gadberry's argument that the FAA does not apply to the arbitration agreement because he is a worker engaged

---

[9] The intertwined claims doctrine states that a nonsignatory to an arbitration agreement can nonetheless force a signatory to the agreement to arbitrate claims against it if the signatory is raising "allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Brantly v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005). Although Matrix maintains that it was never Gadberry's employer, Gadberry has argued that Matrix falls under the statutory definition of employer contained in the ADA, FMLA, and ADEA. Because Gadberry makes all of his claims against Defendants working together as his alleged employers, the intertwined claims doctrine applies.

in foreign or interstate commerce. *See* Dkt. No. 66 at 5 n.1; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001) (holding that the exclusions of Section 1 of the FAA connote only seamen, railroad employees, and others such as air carrier employees engaged in transportation, all of whose employment disputes are arbitrable pursuant to federal laws specific to those groups). Gadberry's former position with RSC simply does not fit into any of the employment categories exempt from the FAA as interpreted by the Supreme Court.

For the reasons set forth above and in the Report, the court finds that the arbitration agreement contained in the employment contract is enforceable against Gadberry.

## III.    DISMISSAL OF GADBERRY'S CLAIMS

Defendants argue that, should the court grant their motions to compel arbitration, Gadberry's claims against Defendants should be dismissed. Dkt. Nos. 53 at 4-5 and 57 at 6. When an arbitration agreement governed by the FAA covers claims that have been asserted in a lawsuit, the court having jurisdiction over the case must compel arbitration and either dismiss the action or stay further judicial proceedings until arbitration has been held. 9 U.S.C. §§ 3 and 4. Further, where all of the claims pleaded by a plaintiff are subject to an arbitration agreement, the court should dismiss the claims rather than merely stay further judicial proceedings. *See Choice Hotels Int'l v. BSR Tropicana Resort*, 252 F.3d 707, 710 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.")

All of Gadberry's claims are subject to the arbitration agreement at issue in this case. *See* Dkt. 53-1 ("any disputes and/or claims I may have against RSC, its affiliates, and/or subsidiaries shall be resolved exclusively by arbitration"). The Report recommends dismissal of Gadberry's complaint. Dkt. No. 66 at 8. Gadberry argues that dismissal is not appropriate but has not raised

any arguments or authority as to why a stay would be appropriate under these circumstances. The court, therefore, dismisses Gadberry's claims without prejudice.

## CONCLUSION

For the reasons set forth above, the court adopts the Report, grants Defendants' motions to compel arbitration, and dismisses Gadberry's complaint without prejudice. All other pending motions are, therefore, terminated so that those issues may be presented in arbitration.

**IT IS SO ORDERED.**

 s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 24, 2011